IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ARMANDO G. SANDERS,

        Plaintiff,                  No. CIV S-05-1989 GEB GGH P

   vs.

M. YORK, et al.,

        Defendants.           FINDINGS & RECOMMENDATIONS

                             /

        Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. This action is proceeding on the amended complaint filed May 26, 2006, as to defendants Correctional Officer York, Doctor Penner and Medical Technical Assistant Rubio. Plaintiff alleges that he received inadequate medical care from defendants following hernia surgery.

        Pending before the court is defendants' summary judgment motion filed November 13, 2007. On December 20, 2007, plaintiff filed an opposition to defendants' motion, a declaration in support of his opposition attached to which are various exhibits, and a statement of disputed facts. On December 28, 2008, defendants filed a reply.

        After carefully considering the record, the court recommends that defendants' motion be granted in part and denied in part.

1

SUMMARY JUDGMENT STANDARDS UNDER RULE 56

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322, 106 S. Ct. at 2552. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323, 106 S. Ct. at 2553.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its

contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11, 106 S. Ct. at 1356 n. 11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (citation omitted).

1  On May 17, 2006, the court advised plaintiff of the requirements for opposing a
2  motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154
3  F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409, 411-12 (9th Cir.
4  1988).

FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

Defendants argue that plaintiff failed to exhaust his administrative remedies as to his claims against defendants Rubio and York. To put this argument in context, the court will summarize the claims contained in the operative second amended complaint filed May 26, 2006.

Plaintiff alleges that on December 15, 2002, he had hernia surgery. Following this surgery, he was returned to California State Prison-Sacramento on the same day. Upon his return, he was taken in a wheelchair to his housing unit and left in the custody of defendants York and Rubio. Plaintiff told defendants that he was in severe pain and could not walk or move his limbs or upper torso without feeling pain. Plaintiff told defendants that he needed to be housed in a medical observation room or at least be given a lower tier cell with a bottom bunk because he could not walk up stairs or hop onto the top bunk.

Defendant York told plaintiff that there was no bottom tier cell or bed available. Defendant Rubio told plaintiff that his operation was not serious enough to warrant being housed in a medical observation room.

Defendants York and Rubio then placed plaintiff's arms over their shoulders and dragged plaintiff up sixteen stairs, causing plaintiff to suffer severe pain. Defendants left plaintiff in his cell. Plaintiff fell as he tried to get on the upper bunk, hurting his back, neck and shoulder. Plaintiff was seen by defendant Penner who denied plaintiff's request to be sent to a medical observation room. Defendant Penner also refused to give plaintiff clean dressings or clean the surgical area. Defendant Rubio arrived and put plaintiff in a wheelchair. He then pushed plaintiff to a lower tier cell which contained a lower bunk bed.

\\\\\

From December 15, 2004, to December 22, 2004, plaintiff continued to suffer extreme pain after being housed in the lower tier cell. He was denied meals, pain medication, clean linen and clothes and showers. He was also forced to sleep in his own urine, blood and vomit.

On December 22, 2004, defendant Penner examined plaintiff. Plaintiff told defendant that he suffered back pain and that he wanted his bandages changed. Plaintiff asked to be transferred to a medical observation room. Defendant Penner gave plaintiff pain medication and dressings but denied his request to be moved to the medical observation room.

Plaintiff suffered a stomach infection which he claims was caused by not being given clean bandages and cleaning materials.

42 U.S.C. § 1997e(a) provides that, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." In order for California prisoners to exhaust administrative remedies, they must proceed through several levels of administrative appeal: 1) informal resolution, 2) formal written appeal on a CDC 602 inmate appeal form, 3) second level appeal to the institution head or designee, and 4) third level appeal to the Director of the California Department of Corrections. Barry v. Ratelle, 985 F. Supp. 1235, 1237 (S.D. Cal. 1997) (citing Cal. Code Regs. tit. 15, § 3084.5). A final decision from the Director's level of review satisfies the exhaustion requirement. Id. at 1237-38.

In Booth v. Churner, 121 S. Ct. 1819 (2001) the Supreme Court held that inmates must exhaust administrative remedies, regardless of the relief offered through administrative procedures. 121 S. Ct. at 1825. Therefore, inmates seeking money damages must completely exhaust their administrative remedies. 42 U.S.C. § 1997e(a) provides that no action shall be brought with respect to prison conditions *until* such administrative remedies as are available are exhausted. McKinney v. Carey, 311 F.3d 1198 (9th Cir. 2002).

On December 6, 2005, plaintiff filed a pleading titled "Inmate Administrative Appeal Exhaustion," attached to which are administrative grievances. Defendants argue that plaintiff did not describe their conduct in sufficient detail in these appeals.

In the appeal, plaintiff specifically wrote, in relevant part,

> I never once saw anyone from the Medical Health Department to organize and evaluate my post-operational care. I was taken to building # 1, cell # 25. I had to be physically carried up the stairs to the second floor by building officers York and MTA Rubio and placed in cell # 225 (which on the second floor) and assigned to a top bed/bunk.

In the appeal, plaintiff goes on to state that he fell out of his bunk and injured his hernia, head, neck, shoulder and lower back.

Defendants argue that the statement above did not exhaust the claims against defendants Rubio and York because it did not allege that defendants dragged plaintiff up the stairs or caused him great pain.

Plaintiff raises two separate claims against defendants Rubio and York. First, he is alleging that they should not have put him in his upper tier, upper bunk cell. Second, he is alleging that the manner in which they carried him up to his cell caused him great pain. Plaintiff's administrative grievances address only the first claim against defendants Rubio and York, i.e. they should not have put him in an upper tier, upper bunk cell. Prison officials reviewing the grievance would not have realized that plaintiff was also complaining that the manner in which he was transported caused him to suffer pain. Accordingly, the court recommends that plaintiff's claim that defendants' Rubio and York violated the Eighth Amendment in how they transported plaintiff to his cell be dismissed because it is not administratively exhausted. Because plaintiff's other claim against these defendants is exhausted, the motion for summary judgment as to this claim should be denied.

The court observes that the problem with raising administrative exhaustion at the summary judgment stage is that if a claim is found exhausted and defendants have not moved for summary judgment on the merits, as in the instant case, the action will proceed to trial on claims

which could possibly have been dismissed on their merits. The court will not allow defendants another "bite at the apple" to file a second summary judgment motion addressing the merits of the remaining claims against defendants Rubio and York as it would waste court resources and delay resolution of this action.

EIGHTH AMENDMENT CLAIM AGAINST DEFENDANT PENNER

As discussed above, defendants' summary judgment motion does not address plaintiff's remaining Eighth Amendment claim against defendants York and Rubio. Accordingly, the court will address only plaintiff's Eighth Amendment claims against defendant Penner.

*Legal Standard*

In order to state a § 1983 claim for violation of the Eighth Amendment based on inadequate medical care, plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 292 (1976). To prevail, plaintiff must show both that his medical needs were objectively serious, and that defendants possessed a sufficiently culpable state of mind. Wilson v. Seiter, 501 U.S. 294, 299, 111 S. Ct. 2321, 2324 (1991); McKinney v. Anderson, 959 F.2d 853 (9th Cir. 1992) (on remand). The requisite state of mind for a medical claim is "deliberate indifference." Hudson v. McMillian, 503 U.S. 1, 4, 112 S. Ct. 995, 998 (1992).

A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Indications that a prisoner has a serious need for medical treatment are the following: the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain. See, e.g., Wood v. Housewright, 900 F. 2d 1332, 1337-41 (9th Cir. 1990) (citing cases); Hunt v. Dental Dept., 865 F.2d 198, 200-01 (9th Cir. 1989). McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other

7

grounds, WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

In Farmer v. Brennan, 511 U.S. 825, 114 S. Ct. 1970 (1994) the Supreme Court defined a very strict standard which a plaintiff must meet in order to establish "deliberate indifference." Of course, negligence is insufficient. Farmer, 511 U.S. at 835, 114 S. Ct. at 1978. However, even civil recklessness (failure to act in the face of an unjustifiably high risk of harm which is so obvious that it should be known) is insufficient. Id. at 836-37, 114 S. Ct. at 1979. Neither is it sufficient that a reasonable person would have known of the risk or that a defendant should have known of the risk. Id. at 842, 114 S. Ct. at 1981.

It is nothing less than recklessness in the criminal sense – subjective standard – disregard of a risk of harm of which the actor is actually aware. Id. at 838-842, 114 S. Ct. at 1979-1981. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837, 114 S. Ct. at 1979. Thus, a defendant is liable if he knows that plaintiff faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Id. at 847, 114 S. Ct. at 1984. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." Id. at 842, 114 S. Ct. at 1981. If the risk was obvious, the trier of fact may infer that a defendant knew of the risk. Id. at 840-42, 114 S. Ct. at 1981. However, obviousness per se will not impart knowledge as a matter of law.

Also significant to the analysis is the well established principle that mere differences of opinion concerning the appropriate treatment cannot be the basis of an Eighth Amendment violation. Jackson v. McIntosh, 90 F.3d 330 (9th Cir. 1996); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

Moreover, a physician need not fail to treat an inmate altogether in order to violate that inmate's Eighth Amendment rights. Ortiz v. City of Imperial, 884 F.2d 1312, 1314 (9th Cir. 1989). A failure to competently treat a serious medical condition, even if some treatment is prescribed, may constitute deliberate indifference in a particular case. Id.

Additionally, mere delay in medical treatment without more is insufficient to state a claim of deliberate medical indifference. Shapley v. Nevada Bd. of State Prison Com'rs, 766 F.2d 404, 408 (9th Cir. 1985). Although the delay in medical treatment must be harmful, there is no requirement that the delay cause "substantial" harm. McGuckin, 974 F.2d at 1060, citing Wood v. Housewright, 900 F.2d 1332, 1339-1340 (9th Cir. 1990) and Hudson, 112 S. Ct. at 998-1000. A finding that an inmate was seriously harmed by the defendant's action or inaction tends to provide additional support for a claim of deliberate indifference; however, it does not end the inquiry. McGuckin, 974 F.2d 1050, 1060 (9th Cir. 1992). In summary, "the more serious the medical needs of the prisoner, and the more unwarranted the defendant's actions in light of those needs, the more likely it is that a plaintiff has established deliberate indifference on the part of the defendant." McGuckin, 974 F.2d at 1061.

Superimposed on these Eighth Amendment standards is the fact that in cases involving complex medical issues where plaintiff contests the type of treatment he received, expert opinion will almost always be necessary to establish the necessary level of deliberate indifference. Hutchinson v. United States, 838 F.2d 390 (9th Cir. 1988). Thus, although there may be subsidiary issues of fact in dispute, unless plaintiff can provide expert evidence that the treatment he received equated with deliberate indifference thereby creating a material issue of fact, summary judgment should be entered for defendants. The dispositive question on this summary judgment motion is ultimately not what was the most appropriate course of treatment for plaintiff, but whether the failure to timely give a certain type of treatment was, in essence, criminally reckless.

*Undisputed Facts*

On December 15, 2004, plaintiff had right inguinal hernia surgery at the California Medical Facility (CMF). Prior to plaintiff's discharge, plaintiff was evaluated by Dr.

\\\\\

\\\\\

Athanassious, the Chief of Surgery, who found plaintiff in stable condition.[1] Dr. Athanassious provided a post-operative treatment plan for plaintiff which included a prescription for Oxycodone for pain. Dr. Athanassious also ordered a follow-up for plaintiff two weeks later at the surgery clinic.

On December 15, 2004, following his surgery plaintiff was returned to California State Prison-Sacramento (CSP-Sac). Dr. Sahota saw plaintiff upon his return and provided plaintiff with the necessary prescriptions and cleared him to return to his cell in the general population.[2] Given that hernia surgery is a routine procedure and all records demonstrate that plaintiff was in good post-operative condition, had no surgical complications or other health conditions, returning plaintiff to his cell on December 15, 2004, was medically appropriate.[3]

Shortly after returning to his cell, plaintiff fell. The nurse who examined plaintiff after his fall wrote in his records that his surgical site looked good with some mild spotting of blood, and no opening or swelling to the site. The nurse wrote that plaintiff complained of lower

---

[1] In his December 20, 2007, statement of disputed facts, plaintiff contends that prior to his discharge from surgery, he had post-operative complications and intense pain. In support of this claim, he cites exhibit 3 attached to his December 20, 2007, declaration filed in support of his opposition. Exhibit 3 includes a CMF Postanesthesia Record for plaintiff following his surgery. These notes, apparently made by a nurse, state that at 10:30 plaintiff was moaning for pain relief. At 11:30 plaintiff stated that he felt alright and was discharged in stable condition. In contrast, Dr. Athanassious's discharge notes state that plaintiff was in good condition and recorded no complications. See Defendants' Exhibit 1. He also prescribed oxycodone for pain. Id. Plaintiff's claim that he had post-surgery complications immediately following his surgery is not supported by the evidence. Plaintiff's pain did not constitute a post-surgery complication, particularly since the medical records indicate that plaintiff was prescribed pain medication and stated that he was "feeling alright" after surgery.

[2] In his December 20, 2007, statement of undisputed facts, plaintiff claims that he was not seen by Dr. Sahota and the attending nurse on December 15, 2004. However, defendants submitted plaintiff's medical records from this date containing Dr. Sahota's name. See Defendants' Exhibit 2. Because plaintiff's statement of undisputed facts is unverified, the court finds undisputed that Dr. Sahota saw plaintiff on December 15, 2004, following his return to CSP-Sac.

[3] Defendants provided the declaration of Dr. Nangalama, a physician and surgeon employed at CSP-Sac, who stated that in his opinion, returning plaintiff to his cell was medically appropriate. While plaintiff disputes this opinion, he has offered no expert evidence contradicting it. Accordingly, the court finds this opinion to be an undisputed fact.

back pain but had good range of movement to upper and lower extremities. The nurse wrote that plaintiff was released back to custody and that his pain would be relieved by the oxycodone previously prescribed.

On December 22, 2004, defendant Penner examined plaintiff. Defendant Penner's entry in plaintiff's medical records is difficult to read. See Defendants' Exhibit 5. Defendant Penner wrote that plaintiff had hernia surgery. Id. It also appears that he wrote "scrotal swelling." Id. Defendant Penner also wrote "gave dressings for dressing ..." Id.

On December 24, 2004, defendant Penner saw plaintiff for complaints of gastritis. Defendant Penner saw plaintiff again on January 20, 2005. At that time, plaintiff was suffering from no distress and Dr. Penner found that he was doing well.

*Analysis*

In his verified amended complaint, plaintiff raises two claims against defendant Penner: 1) on December 15, 2004, following his return to CSP-Sac from surgery and after his fall, defendant Penner refused plaintiff's request to be sent to a medical observation room and failed to clean plaintiff's surgical site or give him new dressings; 2) on December 22, 2004, defendant Penner denied plaintiff's request to be sent to a medical observation room and failed to clean the surgical site.

In the verified second amended complaint, plaintiff alleges that on December 15, 2004, defendant Penner examined him after the fall. Defendants claim that plaintiff's medical records do not indicate that defendant Penner examined plaintiff on that date. A verified complaint may be considered as an affidavit in opposition to summary judgment if it is based on personal knowledge. Lopez v. Smith, 203 F.3d 1122, 1132 n. 14 (9th Cir. 2000). Accordingly, the court finds that whether defendant Penner examined plaintiff on this date is a disputed fact.

However, even assuming that defendant Penner examined plaintiff on that day, the court finds that defendant is entitled to summary judgment as to this claim. It is true that plaintiff alleges in the verified amended complaint that he was subjected to uncomfortable conditions

11

when he was returned to his cell after the fall.  Plaintiff claims that because he was not placed in a medical observation room on December 15, 2004, he lost six pounds, could not sleep, was denied pain medications, meals, clean linen and clothing and showers.  Plaintiff also claims that he was forced to sleep in his own urine, blood and vomit.

Plaintiff has offered no expert evidence supporting his claim that he should have been placed in a medical observation room on December 15, 2004, after his fall.  Moreover, even assuming for the purpose of this motion that plaintiff was denied pain medication, meals, clean linen and clothing and showers, he has not connected these events with defendant Penner.  There is no evidence demonstrating that defendant Penner would have known that plaintiff would be subjected to these conditions were he not placed in a medical observation room.

Plaintiff's claim that he was forced to sleep in his own urine, blood and vomit is likewise unconnected to Penner.  In particular, there is no evidence in the record demonstrating that plaintiff suffered from complications on December 15, 2004, that would have put a reasonable doctor on notice that sending plaintiff back to a cell, as opposed to a medical observation room, would have resulted in him sleeping in his blood, urine and vomit.

Plaintiff alleges that because defendant Penner failed to clean his surgical wound and put clean dressings on it on December 15, 2004, he later suffered from a stomach infection.  In his December 20, 2007, statement of disputed facts, plaintiff cites several of his exhibits in support of this claim.  Exhibit 22 is a "test result" form stating that plaintiff's December 13, 2004, medical tests were within the normal range.  Exhibit 23 is a June 27, 2005, entry in plaintiff's medical records by Dr. Hooper prescribing two medications and ordering a followup in 30 days for lab results.  The court cannot determine what conditions the medications were prescribed for.  Exhibit 24 is a test result for plaintiff dated July 2005 indicating the presence of immunoglobulin G antibodies which indicates "previous exposure to the organism."   The court cannot find from a review of these documents that defendant Penner's failure to adequately clean plaintiff's surgical wound and apply new dressings caused plaintiff to suffer an infection.

Plaintiff also cites portions of his own deposition testimony in support of his claim that he suffered a stomach infection as a result of defendant Penner's failure to adequately clean his surgical wound. At his deposition, when asked if he believed the infection was caused by the surgery plaintiff testified, "I'm no medical expert, but I believe so." Plaintiff's Exhibit 1, p. 99. Plaintiff also admitted that no doctor had ever told him that the stomach infection resulted from his surgery. Id., p. 100.

Because plaintiff has presented no expert evidence demonstrating that his stomach infection was caused by defendant Penner's alleged failure to clean his surgical site and provide clean dressing, defendant Penner should be granted summary judgment as to this claim.

As to plaintiffs' claim regarding December 22, 2004, the undisputed facts demonstrate that defendant Penner examined plaintiff that day and followed the post-operative treatment plan dictated by the Chief of Surgery. Plaintiff claims that defendant denied his request to be placed in a medical observation room. Again, plaintiff has provided no expert evidence demonstrating that his placement in a medical observation room was medically warranted.

For the reasons discussed above, the court finds that defendant Penner should be granted summary judgment as to plaintiff's claim that his failure to clean his surgical site on December 22, 2004, caused him to suffer a stomach infection.

In summary, the undisputed evidence demonstrates that defendant Penner did not act with deliberate indifference to plaintiff's serious medical needs. Accordingly, defendant Penner should be granted summary judgment.

Accordingly, IT IS HEREBY RECOMMENDED that defendants' November 13, 2007, summary judgment motion be denied as to plaintiff's claims that defendants Rubio and York housed him in an upper tier cell in an upper bunk following his surgery in violation of the Eighth Amendment; defendants' motion should be granted in all other respects.

\\\\\

1  These findings and recommendations are submitted to the United States District
2  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty
3  days after being served with these findings and recommendations, any party may file written
4  objections with the court and serve a copy on all parties.  Such a document should be captioned
5  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections
6  shall be served and filed within ten days after service of the objections.  The parties are advised
7  that failure to file objections within the specified time may waive the right to appeal the District
8  Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

9  DATED: 04/29/08

/s/ Gregory G. Hollows

10 _____
UNITED STATES MAGISTRATE JUDGE

12  san1989.sj